## VICK v. STATE.

No. A-11134. May 10, 1950.

(218 P. 2d 389.)

304

H. M. Shirley, Coalgate, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for defendant in error.

JONES, P. J.  The defendant, Carl Vick, was charged in the district court of Coal county with the crime of unlawfully disposing of property covered by chattel mortgage, was tried, convicted and pursuant to the verdict of the jury was sentenced to pay a fine of $100 and has appealed.

Two propositions are presented in the brief of defendant: First, the evidence was insufficient to sustain the conviction. Second, the court erred in not dismissing the action when the state failed to affirmatively show that the intangible tax had been paid on the note in question.

There was a sharp conflict in the testimony of the prosecuting witness, and the defendant and we quite frankly state that had we been on the jury our verdict would

probably have been for the defendant. However, the jurors of Coal county heard the evidence, saw the demeanor of the witnesses upon the stand, were familiar with the conditions described by the witnesses and have returned their verdict upon this conflict of evidence. Even though we feel that had we been on the jury we would have voted for acquittal, still, under the established law of the state, we do not feel justified in substituting our judgment for that of the jurors upon these disputed questions of fact where there is ample competent evidence if credited by the jury to sustain their findings.

W. L. Baughman who operates a beer parlor and pool hall was the prosecuting witness. He testified that he sold the defendant 13 head of cattle· in August, 1947, and took a note and chattel mortgage in the sum of $1,155 from the defendant which was due on October 16, 1947. That the chattel mortgage covered the 13 head of cattle and 750 bushels of corn.

Baughman further testified that after the note became due the defendant came to his place and told him that he didn't get the corn out of the field and asked him to let the note ride a little longer; that nothing was done until January, 1948; that in January he tried to foreclose his mortgage but could not find any of the corn.

John McGinnis testified that on December 29, 1947, he hauled 100 bushels of corn from.the defendant's place to Limestone Gap; that part of the corn was in the field and part had been gathered; that he delivered the corn to John McEntire.

Clark McEntire testified that he lived at Limestone Gap and purchased some corn from the defendant. Upon objection being made to the testimony of this witness the court sustained the objection upon the theory that

the information alleged a sale of the mortgaged property to Frank Langford and C. L. Taylor and that therefore it would be improper to admit evidence of sales to other parties.

Frank Langford testified that in October he bought 106 bushels of corn from the defendant; that he got the corn out of the barn and off of a wagon there at the place defendant was farming.

C. L. Taylor testified that in November he purchased $237.75 worth of corn from the defendant; that the corn was in two fields there at defendant's place.

W. L. Baughman being recalled as a witness testified that the corn upon which he had a mortgage was in the field on the Perkins' place.

The defendant testified that in 1946 he purchased 50 head of cattle from Baughman; that he borrowed the money at the Case State Bank in Stonewall; that Baughman signed the note with him for $1,907; that the note was executed on January 29, 1947, and a mortgage was given on the 50 head of cattle and other livestock belonging to the defendant plus his crop for 1947, consisting of 12 acres of corn, 12 acres of peas, and other crops. The defendant testified that he paid about $900 on this note; that in the fall of 1947 the defendant suggested that he make the note and mortgage, which is the subject of this complaint, so that he could take them to the bank at Stonewall and get an extension on the old note which he and plaintiff had signed; that he signed the note and mortgage at which time there was no consideration at all given for the note; that he later asked Baughman to give him back the note and mortgage and Baughman refused to do so. The defendant said the corn sold to Taylor and Langford as testified to by them was

corn which he and his brothers had raised and was not covered by mortgage to anybody.

The brothers of defendant each testified in his behalf and verified the testimony of defendant that the corn which was sold was corn raised by the brothers and was not covered by a mortgage.

C. S. Case, president of the Case State Bank at Stonewall, testified concerning the transaction which defendant and Baughman had with his bank in connection with the loan of $1,907. He testified that when this note and mortgage was executed the money was given to Baughman; that the defendant, in November, 1947, made two payments on the note, one in the amount of $400 and the other in the amount of $500 and that the balance on the note was still owing.

Seven witnesses were then placed on the witness stand and they each testified that they were well acquainted with Baughman and that his reputation for being an honest and truthful man in the community where he resided was bad. On cross-examination it was disclosed that some of these witnesses had had trouble with Baughman and others testified on cross-examination that the people in the community thought that he was a cattle thief.

As hereinabove stated, the evidence was conflicting. The jury chose to believe the witness Baughman whose reputation was discredited by witnesses for the defendant. We cannot say there was an absence of competent evidence to support their verdict. The record showed that the defendant was a young man who had just been recently discharged from the army; that he had never been arrested before in his lifetime; that he spent 37 months fighting in the Phillippines and in the South Pacific; was seriously wounded and was decorated with a Purple

Heart. Probably for these reasons the sympathy of this court is on the side of the defendant in this particular action.

During the trial of the case Baughman identified the note and mortgage signed by the defendant and they were admitted in evidence. At the close of the state's case counsel for defendant moved to dismiss the prosecution for the reason the evidence did not. affirmatively show that Baughman had paid the intangible tax on the note and mortgage, which motion was overruled.

68 O.S. 1941 § 1501 defines intangible personal property and among other definitions it includes money, accounts and bills receivable, bonds, promissory notes, and all other evidences of debt. Under such a definition, the note secured by the chattel mortgage here referred to was intangible personal property and as such should have been submitted for taxation in Coal county during the assessing period commencing in January, 1948. This assignment of error is predicated upon Title 68 O.S. 1941 § 1515, which provides:

"In every action or suit in any court for the collection of any bond, note, account receivable, or other intangible personal property as defined in Section 1 of this Act, the plaintiff must allege and prove:

"That such intangible personal property sued upon has been assessed for taxation under the provisions of this Act for every tax year during which he was the owner of same, and that all taxes, together with accrued interest and penalties, assessed upon the property for such period, have been paid; provided, that the plaintiff shall not be required to prove assessment and payment hereunder for a period of more than three (3) fiscal years prior to the time of bringing his action, nor for any period of time in which the subject of his action was not taxable under this Act; and provided further, if such

intangible property is not subject to such taxes he may so allege, stating the controlling facts upon which is based such allegation.

"If the petition or complaint of the plaintiff fails to make the allegations herein prescribed, or if he fails to prove facts supporting such allegations when made, the action must be dismissed upon demurrer or motion of the defendant, or by the court on its own motion."

This section of the statute fixes the quantum of proof which the holder of a note shall make before he could effectively maintain a civil action for collection of the note and pertains to the civil rights between the parties to the note. Here we have a criminal action which is brought for the alleged violation of the laws of the state. The statute does not cancel the obligation owing from the debtor to the creditor and does not prevent the creditor from collecting his debt, but rather it is to force payment of the tax and is for the protection of the public in the collection of revenue. Waters v. Rushing, 194 Okla. 306, 151 P. 2d 423. Here there was no evidence as to whether the prosecuting witness did or did not list the note for assessment of the intangible tax and no question was asked as to whether he had paid the intangible tax and we do not think that such was a proper issue in a criminal action.

This action was instituted under 21 O.S. 1941 § 1834 which provides:

"Any mortgagor of personal property, or his legal representative, who, while such mortgage remains in force and unsatisfied, conceals, sells, or in any manner disposes of such property, or any part thereof, or removes such property, or any part thereof, beyond the limits of the county, or materially injures or wilfully destroys such property, or any part thereof, without the written consent of the holder of such mortgage, shall be deem-

ed guilty of a felony, and shall, upon conviction, be punished by imprisonment in the penitentiary for a period not exceeding three years or in the county jail not exceeding one year, or by a fine of not to exceed five hundred dollars: Provided, that the writing containing the consent of the holder of the mortgage, as before specified, shall be the only competent evidence of such consent, unless it appear that such writing has been lost or destroyed. R.L. 1910, § 2755."

There has been no amendment to this statute since the adoption of the intangible property act, requiring as a prerequisite to the maintaining of a prosecution for the alleged violation of said statute an affirmative showing that the intangible tax has been paid on the note, such as is required before a civil action for recovery of the debt may be maintained between the parties. Until the Legislature makes such provision in the Criminal Code, we do not feel authorized to by judicial legislation write such provision into law. The judgment and sentence of the district court of Coal county is affirmed.

BRETT and POWELL, JJ., concur.